IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**KIP ANTONIO MAJETTE**,

      Petitioner,

v.                                          Civil Action No. **3:14CV644**

**HAROLD W. CLARKE**,
*Director, Department of Corrections*,

      Respondent.

## OPINION

Kip Antonio Majette ("Majette") filed a petition pursuant to 28 U.S.C. § 2254 challenging his conviction in the Circuit Court of the City of Newport News, Virginia ("Circuit Court") for the murder of Antonio Pierce. Majette presents the following claims:

> **Claim One:** Counsel rendered ineffective assistance failing to introduce evidence to impeach the testimony of Niyosha Jones.
>
> **Claim Two:** Counsel rendered ineffective assistance when he argued in closing that he did not believe that either Niyosha or Nickie Jones had lied on the stand. Majette argues that by making this statement, he removed from trial judge's consideration a theory of innocence based on finding that one or both of these witnesses lied at trial.
>
> **Claim Three:** Counsel rendered ineffective assistance when he failed to argue in closing or at a later motion the inconsistencies between and within the testimony of Nickie Jones and Niyosha Jones.
>
> **Claim Four:** Counsel rendered ineffective assistance when he failed to impeach Niyosha Jones with her 2007 conviction for welfare fraud.

Respondent, Harold W. Clarke, moves to dismiss the § 2254 Petition. (Dk. No. 5.) Because Majette cannot show that trial counsel's actions constituted ineffective assistance of counsel the Court GRANTS the motion to dismiss. Majette failed to meet both the performance and prejudice prongs of ineffective assistance of counsel for each of his four claims. As for the

performance prong, trial counsel's alleged failings were strategic decisions that do not constitute ineffective assistance of counsel. Further, even if Majette had met the performance prong, he failed to meet the prejudice prong because none of trial counsel's choices created a reasonable probability that the Circuit Court would not have convicted Majette.

## I. PROCEDURAL HISTORY

On March 9, 2009, a Grand Jury in the City of Newport News charged Majette with the murder of Antonio Pierce, felonious use or display of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. *Commonwealth v. Majette*, Nos. CR09000553-00, CR090000554-00, and CR09000555-00 (Va. Cir. Ct. March 11, 2010). Following a bench trial, the Circuit Court convicted Majette on all counts and sentenced him to life imprisonment plus five years. *Id.* On direct appeal, the Court of Appeals denied the appeal and the Virginia Supreme Court refused the petition for appeal. *Majette v. Commonwealth.*, No. 0637-10-1, at 1 (Va. Ct. App. June 7, 2011).

Majette then filed a state habeas petition in the Circuit Court. The Circuit Court denied and dismissed the petition after holding an evidentiary hearing. *Majette v. Director, Dept. of Corrections*, No. CL1203529-03 (Va. Ct. App. Sept. 26, 2013). Majette appealed the decision to the Virginia Supreme Court, which denied the petition for appeal. *Majette v. Director, Dept. of Corrections*, No. 132015 (Va. 2014). Majette then filed his federal petition for a writ of habeas corpus. (Dk. No. 1.)

## II. MATERIAL FACTS

### A. Guilt Phase

Antonio Pierce died on June 17, 2008, from four gunshots, including a lethal shot to the head. (Trial Tr. vol. 1, 134.) At trial, the defense presented no evidence aside from cross-

2

examining the prosecution's witnesses.  The Commonwealth relied on the testimony of Niyosha Jones, Pierce's niece, and Johnese "Nickie" Jones, Pierce's girlfriend.[1]  The Commonwealth presented no other witnesses who were present at the scene of the crime.  In addition, Niyosha testified to seeing the shooting.  (Trial Tr. vol. 1, 147.)  At the preliminary hearing, a Commonwealth witness named Emmanuel Gorham also testified to seeing Majette shoot Pierce, but did not testify at trial.  (Evidentiary Hearing Tr. vol. 1, 66.)

Both Niyosha and Nickie testified that a black man and a black woman came to Niyosha's front porch on June 17, 2008, asked for a man named "Buster," and showed them a piece of paper with Pierce's phone number.  (Trial Tr. vol. 1, 98, 137.)  Both Nickie and Niyosha identified Majette as the man who came to the porch.  *Id.* at 98, 135.  Niyosha also testified that she saw the shooting and identified the two men involved as Pierce and Majette.  *Id.* at 147.  In her testimony, she said that Pierce entered her front door about 20 minutes after the man and woman had come to the porch.  She maintained that she stayed on her front porch but saw Pierce exit the back door headed towards "Aunt Josie's house."  (Trial Tr. vol. 1, 140.)  In addition, she testified that she initially believed Pierce had shot someone and that she ran to her doorway and yelled into her home that Pierce had just shot someone.  *Id.* at 147.  Nickie on the other hand did not remain on the porch and did not identify Majette as the shooter.

After the shooting, neither Niyosha nor Nickie picked Majette out of a photo array.  They first identified Majette in court, at his preliminary hearing, after the news broadcast his photo in connection with Pierce's murder.  *Id.* at 211-212.  Both testified that Majette's appearance in the photo, specifically his hair, looked different from the way he appeared on the day of the shooting.

---

[1] Due to the fact that both of the main witnesses have the same last name, the Court will refer to each witness by her first name to avoid confusion.

## B. State Court Habeas Proceedings

On November 19, 2012, Majette filed a writ of habeas corpus in the Circuit Court. (State Habeas Petition, 1.) The state court petition included three habeas claims: (1) "Trial counsel . . . unreasonably failed to introduce affirmative evidence to impeach the testimony of 'Nickie' Jones and Niyosha Jones that the Petitioner was the male at the front porch, and of Niyosha Jones that the Petitioner later shot the deceased;" (2) "trial counsel . . . unreasonably waived the reasonable theory of innocence that 'Nickie' Jones and/or Niyosha Jones lied in their testimony, rather than having to rely on just the argument that they were honestly mistaken;" (3) trial counsel unreasonably failed to point out, at closing or in a later Motion to set aside, "the reasonable doubts from the pivotal factual and logical inconsistencies in and between the testimonies of 'Nickie' Jones and Niyosha Jones, and alternatively, that the Commonwealth's evidence did not exclude all reasonable doubt even if believed." *Id.* at 3.

The Circuit Court granted an evidentiary hearing. At that hearing, Majette's trial lawyer testified that he believed he inadequately represented Majette because he did not put on a witness to testify to the layout of the apartment (specifically whether Niyosha could have seen the back door from the front porch). (Evidentiary Hearing Tr. vol. 1, 94.) He also emphasized that the case rested on the credibility of Niyosha. *Id.* at 112. Finally, trial counsel said that he had originally believed that Emmanuel Gorham would testify for the Commonwealth. He planned his trial strategy around discrediting Gorham. *Id.* at 66. Under this strategy, Lee wanted to use the testimony of Nickie and Niyosha to discredit Gorham. *Id.*

On September 26, 2013, the Circuit Court denied Majette's habeas petition. The court held that nothing trial counsel "did was unreasonable," thus the Circuit Court found that Lee was not ineffective under the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).

### III.  LEGAL STANDARD

#### A.  Applicable Constraints on Federal Habeas Corpus Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribes this Court's authority to grant relief by way of a writ of habeas corpus.  28 U.S.C.  § 2254 *et seq*.  "State court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence."  *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008).[2]

The district court's review of the state court's factual findings is purposefully narrow. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1399 (2011) (holding that the district court's review under § 2254(d) is limited to the evidentiary record before the state court because "[i]t would be contrary to [AEDPA's] purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*").

Additionally, a federal court may *not* grant habeas relief with respect to any claim that the state court adjudicated on the merits unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] The AEDPA itself states that the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e) (1).

28 U.S.C. § 2254(d); *see Appleby v. Warden*, 595 F.3d 532, 535 (4th Cir. 2010) (quoting *Cummings v. Polk*, 475 F.3d 230, 237 (4th Cir. 2007)).   "[T]o obtain federal habeas relief, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in the existing law beyond any possibility for fairminded disagreement.'"   *Jackson v. Kelly*, 650 F.3d 477, 492 (4th Cir. 2011) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."   *Harrington*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   By design, this highly deferential standard is "difficult to meet," and governs this Court's review of all legal determinations made on the merits by state habeas courts.   *Id.*

Federal courts show special deference in habeas cases raising ineffective assistance.   The Supreme Court has directed federal courts in ineffective assistance of counsel claims that a "state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself."   *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

### B.   Exhaustion & Procedural Default

A federal court reviewing a habeas petition filed pursuant to 28 U.S.C. § 2254 must initially determine whether the petitioner has properly exhausted his claims.   A petitioner's failure to properly exhaust claims constitutes a jurisdictional bar on the Court's ability to hear the petitioner's claims.   Accordingly, this Court may not grant a petitioner relief unless he can demonstrate that he "has exhausted the remedies available in the courts of the State" which holds him in custody.   28 U.S.C. § 2254(b) (1) (A); *see also Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 491–92 & n.10 (1973)).   Exhaustion

requires not only that the petitioner utilize all possible remedies before seeking relief in federal court, but also that petitioner fairly present any claim first to the state's highest court for disposition. *Matthews v. Evatt*, 105 F.3d 907, 910–11 (4th Cir. 1997).

Procedural default dictates that "a federal court will not review the merits of claims, including constitutional claims that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 132 S. Ct. at 1316. The federal habeas court can excuse such a default and reach the merits of the defaulted claim only if the prisoner can show "cause" for his failure to comply with state rules and "prejudice" from a violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Until 2012, the Supreme Court made clear that mistakes by counsel at state-level postconviction or habeas proceedings could not qualify as "cause" for overcoming procedural default. *Id.* at 754. That changed with the "narrow exception" set out in *Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012).

In *Martinez* the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* This equitable rule has been broken down into four elements: a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the "cause" for default "consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding"; (3) "the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law "requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding." *Fowler v. Joyner*, 753 F.3d 446, 461 (4th Cir. 2014) (quoting *Trevino v. Thaler*, 133 S. Ct. 1911,

at 1918)). If, and only if, the prisoner meets each element, the federal habeas court can "find 'cause,' thereby excusing a defendant's procedural default." *Trevino*, 133 S. Ct. at 1918.

### III. DISCUSSION

Majette presents four ineffective assistance of counsel claims in his federal habeas petition. Three of these claims have been fully exhausted through state court proceedings and ripe for federal court review. Majette brought his fourth claim for the first time on his federal habeas petition.

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, a court need not determine whether counsel performed deficiently if the court can readily dismiss the claim for lack of prejudice. *Id*. at 697.

When counsel's errors include a failure to act, the standard remains deferential. *Id*. ("In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.") When assessing counsel's investigation, the Court must conduct an objective

review of counsel's performance based on reasonableness under prevailing professional norms, which includes a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time of the decision." *Wiggins v. Smith*, 539 U.S. 510, 523, (2003). The Court must make an effort to eliminate the "distorting effects of hindsight." *Id.*

The Court reviews an ineffective assistance of counsel claim on a § 2254 petition doubly deferentially. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Both the *Strickland* standard and the § 2254(d) standard are highly deferential and hard to satisfy. *Id.* When both standards apply, "the question is not whether counsel's actions were reasonable. Rather, the court must analyze whether any reasonable argument exists that counsel satisfied Strickland's deferential standard." *Id.*

### A. Exhausted Claims

#### 1. Trial Counsel's Failure to Impeach Niyosha Jones

Majette first claims that trial counsel failed to introduce evidence to impeach the testimony of Niyosha Jones, rendering trial counsel ineffective. (Dk. No. 1, 13.) Specifically, Majette claims that the "state court unreasonably failed to agree with trial counsel admission that he should have introduced affirmative evidence that the apartment's back door cannot be seen from the front porch." *Id.* Majette relies on the testimony of trial counsel to support his claim that these actions constitute ineffective assistance of counsel, but the Court must analyze the *Strickland* standard as an objective standard that does not depend on an attorney's own analysis of his or her representation. *Wiggins* 539 U.S. at 523.

Majette originally brought this claim in his state habeas petition and the Circuit Court denied it because trial counsel's actions did not fall below the reasonableness standard under *Strickland*. The court held,

9

> "when you apply the standards of *Strickland*, the Virginia cases that follow *Strickland*, all it needs to do is be reasonable. And I think he did a reasonable— [trial counsel] did a reasonable job in his examination or cross-examination of Ms. Jones. It was not perfect. But I can't think of a question he would have asked through this that would have made any impact one way or the other on Judge Conway's decision." (Status Hearing Tr., 24.)

The Circuit Court found that the trial counsel's actions reasonable and not prejudicial to Majette's case. Consequently, § 2254 limits this Court's review of the state court to situations that resulted in a decision contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). This Court finds that Majette's claim did not meet either of these standards.

The Circuit Court made its determination after an evidentiary hearing in which trial counsel testified at length. While trial counsel did testify that he now thought he should have had someone testify to the layout of the apartment (Evidentiary Hearing, Tr., 55), he also testified that during trial he did not "look into the apartment and lines of sight at the time as a way of undermining their testimony because in my mind during his trial they [Niyosha and Nickie] were some of my best evidence on Mr. Majette's defense." *Id.* at 54. Trial counsel made a strategic decision to not undermine the testimony of Niyosha or Nickie Jones. He made "a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691(1984). Furthermore, where a petitioner makes a claim for ineffective assistance of counsel for failure to produce a witness, the Court must give an even greater presumption of reasonableness to counsel's actions because "the decision whether to call a defense witness is a strategic decision" demanding the assessment and balancing of perceived benefits against perceived risks, and one to which "[w]e must afford ... enormous deference." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004) citing *United States v. Kozinski*, 16 F.3d 795, 813 (7th Cir.1994).

10

Mr. Lee chose to spend his time focusing on how to discredit Gorham instead of how to impeach witnesses he believed essential to the defense.  Mr. Lee made reasonable strategic decisions that do not reach the standards required for ineffective assistance of counsel; therefore, the Court finds Majette's first claim meritless.

### 2.  Trial Counsel's Statements in Closing

Next, Majette claims that trial counsel acted unreasonably when he argued in closing that he did not believe that either Niyosha or Nickie lied on the stand.  Majette argues that by making this statement, he removed from the trial judge's consideration a theory of innocence based on finding that one or both of these witnesses lied at trial.  (Dk. No. 1, 18.)  The Circuit Court heard and denied this claim.  The Circuit Court's proceeding addressed the reasonableness of this action, thus this Court looks only to if the Circuit Court acted contrary to clearly established federal law or made an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. § 2254(d) (1)–(2).

The Circuit Court held that "calling somebody a liar is a two-edged sword…[trial counsel] himself testified that he didn't believe they were lying.  He just believed they were mistaken.  So that tactic was certainly not something that this Court thinks he should have done, that it's certainly not unreasonable that he didn't do." (Status Hearing Tr. vol.1, 24.)  The Circuit Court explicitly held that trial counsel made a reasonable strategy choice and this Court finds no reason to believe that ruling contrary to clearly established federal law or an unreasonable determination of facts in light of the evidence presented in the state court proceedings.   In conclusion, this Court finds Majette's second claim for habeas relief meritless.

### 3. *Trial Counsel's Failure to Impeach Witnesses on Inconsistencies*

Majette's third claim for habeas relief asserts that trial counsel performed unreasonably by failing to argue in closing or at a later motion the inconsistencies between and within the testimony of Nickie Jones and Niyosha Jones. (Dk. No. 1, 23.) The Circuit Court heard and denied this claim; thus § 2254 limits this Courts review to situations where the Circuit Court's decision constituted an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d) (1)–(2). This Court finds that Majette has not met either of these standards.

Trial counsel testified that he based his trial strategy on discrediting Emmanuel Gorham, who identified Majette as the shooter at the preliminary hearing. (Evidentiary Hearing Tr. vol. 1, 66, 77.) He planned to use the testimony of Niyosha and Nickie Jones to discredit Gorham. Discrediting Niyosha and Nickie would weaken the overall strategy of discrediting Gorham. At trial, the government did not call Gorham.

The Circuit Court denied this claim because reasonably good criminal lawyers would differ on what they would do in this situation. The court held that "the failure to stack defenses, if you want to use that term, was of no consequence and would not have change[d] Judge Conway, can't reasonably [be] consider[ed] to change Judge Conway's decision. I don't think that anything that [trial counsel] did was unreasonable." (Status hearing, Tr. vol. 1, 25.) The Circuit Court addressed the reasonableness of trial counsel's actions as required under the *Strickland* ineffective assistance of counsel standard and found his actions reasonable. This Court does not find that the state court misapplied the law or unreasonably applied the facts. Consequently, the Court denies Majette's third claim.

## A.  Unexhausted Claims

### 1.  Trial Counsel's Failure to Impeach with Past Conviction

Majette's fourth claim asserts that trial counsel failed to impeach Niyosha Jones with her

2007 misdemeanor conviction for welfare fraud.  (Dk. No. 1, 32.)  Majette further alleges that

trial counsel had knowledge of the conviction at the time of trial.  The Circuit Court did not hear

this claim and Majette first brought this claim on his federal petition for the writ of habeas

corpus, consequently Majette has not exhausted this claim.  Failure to exhaust a state remedy

ordinarily places additional procedural roadblocks on the road to securing habeas relief, subject

to a limited exception created in *Martinez.*  Fortunately, the Court need not engage in the

hairsplitting suggested in *Martinez*, because review of Majette's claims on the merits shows no

basis for granting relief.

The Fourth Circuit has held that a defense attorney's failure to impeach the only

eyewitness to a crime based on a misdemeanor conviction for writing bad checks did not

constitute ineffective assistance of counsel.  *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir.

1986).  While Niyosha testified as the only eyewitness to the murder, her conviction did not

directly call into question the reliability of her testimony.  *Id.* ("The failure to use worthless

check convictions to impeach Roark does not give rise to a comparable implication of Roark's

testimonial untrustworthiness, however.").  A misdemeanor welfare fraud conviction does not

directly call into question the reliability of her testimony, just as a conviction for passing

worthless checks does not directly call into question a witness's credibility.  *Id.*

The Fourth Circuit in *Hoots* also emphasized that impeaching a witness on a collateral

matter can have unintended negative side effects for the defense.  *Id.*  Given all of the different

issues related to impeaching a witness, trial counsel made a strategic decision not to impeach

Niyosha Jones with her criminal conviction.  As discussed previously, trial counsel's strategy focused on using Niyosha's testimony to undermine Gorham's testimony and thus he wanted her to appear trustworthy.  Trial counsel emphasized that for the parts of Niyosha's testimony that did not help his client he wanted the court to believe that she made a mistake rather than lied.  He said, "my feeling was I should go in and argue, limit myself to they're wrong, not necessarily taking the leap that they are overtly lying."  Impeaching her with her criminal conviction would only have served to undermine this strategy because it would have implied that she lied.  Trial counsel made a reasonable strategic choice to not impeach Niyosha with her criminal conviction.

Finally, even if the failure to impeach Niyosha constituted a failure in performance by trial attorney Lee, it did not prejudice the result.  Under *Strickland,* the petitioner needs to show more than a mere chance that the result might have been different.  *Strickland,* 466 U.S. at 694.  The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.*  A reasonable probability means that trial counsel's failure likely undermines the Court's confidence in the result.  *Id.*  This Court does not find a reasonable probability that if trial counsel had impeached Niyosha Jones with her misdemeanor welfare fraud conviction; the result in Majette's case would change.  The Circuit Court held that there [were] no illogical inferences in her testimony or in what she said she saw and what apparently happened from the circumstantial evidence."  (Status hearing Tr. vol.1, 24.)  In other words, the Circuit Court held that Niyosha's testimony made sense and matched the other evidence presented; thus even if trial counsel had impeached her with a relatively minor crime, it would not have been enough to undermine her testimony.  Majette failed to prove that the Circuit Court would not have found

14

him guilty if trial counsel had impeached Niyosha with her welfare fraud conviction. Consequently, this Court finds Majette's fourth claim meritless.

## CONCLUSION

For the foregoing reasons, Clarke's Motion to Dismiss (Dk. No. 5) will be GRANTED. Majette's claims will be DISMISSED and his § 2254 Petition will be DENIED. The action will be DISMISSED. A certificate of appealability will be DENIED.[3]

An appropriate Final Order shall issue.

/s/

John A. Gibney, Jr.
United States District Judge

Date: September 29, 2015
Richmond, Virginia

---

[3]An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Majette fails to meet this standard.